IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                                                                              No. CR 20-1499 RB

BENJAMIN SOSA,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**BEFORE THE COURT** is Mr. Sosa's Motion for Reduction of Sentence, in which Mr. Sosa argues he is entitled to a sentence reduction under Amendment 821 to the United States Sentencing Guidelines. (Doc. 18.) *See* U.S. SENT'G GUIDELINES MANUAL § 4A1.1(e) (U.S. SENT'G COMM'N 2023) (USSG). The Government filed a response and Mr. Sosa filed a reply. (Docs. 19–20). Having reviewed the parties' arguments, the record, and the applicable law, the Court finds the Motion is not well-taken. It is therefore **DENIED.**

**I.    BACKGROUND**

In late 2014, the Court sentenced Mr. Sosa to 64 months incarceration for one count of being a felon in possession of a firearm and one count of being a felon in possession of ammunition. *United States v. Sosa*, 14cr511, Doc. 29 (D.N.M.) (*Sosa I*). The Court ordered the sentence to run concurrently with the sentence imposed for convictions in a State of New Mexico case. *Id.* (citing *State of New Mexico v. Sosa*, Case No. D-504-CR-200500458).(*See also* Doc. 3 at 6.) In September 2019, Mr. Sosa was on supervised release in Artesia, New Mexico, when officers arrested him for possessing a firearm. (Doc. 3 at 6.)

Approximately one year later, two things happened. First, the Court revoked Mr. Sosa's supervised release in *Sosa I. Sosa I,* Doc. 79. Second, the United States and Mr. Sosa entered into

a Rule 11(c)(1)(C) Plea Agreement, pursuant to which Mr. Sosa agreed to plead guilty to possessing a stolen firearm while on supervised release, *see* 18 U.S.C. § 922(g)(1), and the United States agreed to recommend (1) a specific sentence of 92 months and (2) that the sentence in *Sosa I* run concurrently with the sentence in this case. (Docs. 7 at 4–5; 9 at 3.) Before sentencing in this case, the United States Probation Office (USPO) prepared a Presentence Report stating Mr. Sosa's base offense level was 24[1] and, after a two-point upward adjustment for possessing a stolen firearm and a three-level downward adjustment for acceptance of responsibility, his total offense level was 23. (Doc. 9 at 4–5.) The USPO calculated a total of 11 criminal history points and, because Mr. Sosa was on supervised release at the time of his arrest, added two "status points" for a total of 13 criminal history points. (*Id.* at 9 (citing § 4A1.1(d) (pre-Amendment 821)).) Mr. Sosa's criminal history category was therefore VI. (*Id.*) *See* USSG Chap. 5, Part A.

An offense level of 23 and a criminal history category of VI resulted in an advisory Guidelines range of 92 to 115 months. (Doc. 9 at 15.) The USPO noted that, had the defendant been "convicted at trial, his offense level would have been 26, absent any adjustments. An offense level of 26 combined with a criminal history category of VI results in a guideline imprisonment range of 120 months to 150 months." (*Id.*)

At sentencing on November 4, 2020, the Court accepted the Plea Agreement and imposed the recommended sentence of 92 months of incarceration followed by three years of supervised release. (Docs. 14–15; 16 at 1.) Consistent with the United States' recommendation in the Plea Agreement, the Court ordered the incarceration in *Sosa I* to run concurrently with the 92-month sentence in this case. *Sosa I*, Doc. 79 at 3.

---

[1] The USPO used the 2018 Guidelines Manual to determine Mr. Sosa's offense level and criminal history category. (Doc. 9 at 4.)

2

Since Mr. Sosa was sentenced, Congress amended the Sentencing Guidelines to modify the way "status points" are assessed for certain offenses (Amendment 821). *Compare* § 4A1.1(d)(pre-amendment) *with* Sentencing Guidelines for United States Courts, 88 Fed. Reg. 28254-01, 2023 WL 3199918 (May 3, 2023) *and* § 4A1.1(e). Amendment 821 applies retroactively. *See* § 1B1.10(a)(1), (d). Having been in continuous custody since September 2, 2019, Mr. Sosa now asks the Court to reduce his sentence to 84 months under Part A of Amendment 821. (Docs. 16 at 2; 18.)

## II. LEGAL STANDARDS

### A. Sentence Modifications under 18 U.S.C. § 3582

A district court may modify a sentence "only pursuant to statutory authorization." *United States v. Mendoza*, 118 F.3d 707, 709 (10th Cir. 1997). Section 3582(c)(2) provides that authorization for a defendant "who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission." 18 U.S.C. § 3582(c)(2); *see also* § 1B1.10(a)(1). Section 3582 "authorize[s] only a limited adjustment to an otherwise final sentence and not a plenary resentencing proceeding." *Dillon v. United States*, 560 U.S. 817, 826 (2010).

Sentence reductions fall "within the district court's discretion." *United States v. Osborn*, 679 F.3d 1193, 1196 (10th Cir. 2012) (quoting *United States v. Dorrough,* 84 F.3d 1309, 1311 (10th Cir. 1996)). However, the Sentencing Guidelines require that "any such reduction in the defendant's term of imprisonment shall be consistent with" the USSG policy statements. § 1B1.10(a)(1). Those policy statements require courts proceeding under § 3582(c)(2) to substitute the amended Guidelines range for the range applicable when the defendant was sentenced and to "leave all other guidelines application decisions unaffected." § 1B1.10(b)(1). "Under § 3582(c)(2),

3

a court may then grant a reduction within the amended Guidelines range if it determines that one is warranted 'after considering the [applicable] factors set forth in'" § 3553(a). *Dillon*, 560 U.S. at 822 (quoting § 3582(c)(2)). "Except in limited circumstances, however," a court may not reduce a sentence "to a term that is less than the minimum of the amended" Guidelines range. *Id.* (quoting § 1B1.10(b)(1)).

Under § 3553, courts must consider, as applicable, "the nature and circumstances of the offense and the history and characteristics of the defendant;" and whether the sentence imposed "reflect[s] the seriousness of the offense, . . . promote[s] respect for the law, and . . . provide[s] just punishment for the offense," "afford[s] adequate deterrence to criminal conduct," and "protect[s] the public from further crimes of the defendant . . . ." § 3553(a)(1), (2)(A)–(C). In addition, courts consider the sentencing range under the Guidelines and the Sentencing Guidelines' policy statements. § 3553(a)(4), (5). Finally, courts consider the "kinds of sentences available, . . . the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; . . . and the need to provide restitution to any victims of the offense." § 3553(a)(3), (6), (7). "[A]n ameliorative amendment to the Guidelines in no way creates a *right* to sentence reduction." *Osborn*, 679 F.3d at 1196.

B. **Status Points and Amendment 821**

Section 4A1.1(e) of the Sentencing Guidelines governs the Court's addition of "status points" to a defendant's criminal history point total for an offense committed "while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." § 4A1.1(e). Before Amendment 821, courts assessed two "status points" for such crimes. *United States v. McDonald*, No. CR 22-1317 JB, 2024 WL 2110525, at *8 (D.N.M. May 10, 2024). Amendment 821 reduced the number of status points added depending

4

on the defendant's criminal history points. *See* 88 Fed. Reg. 28254-01, 2023 WL 3199918; § 4A1.1(e).

Amendment 821 has two parts. Part A provides that a person who has seven or more criminal history points now receives only one status point for applicable offenses, instead of two. § 4A1.1(e). In addition, a person with six or fewer criminal history points now receives no status points for such offenses. *Id.* Part B provides that courts may reduce the offense levels by two for offenders who have zero criminal history points and meet specified additional criteria. § 4C1.1(a); U.S. SENT'G GUIDELINES MANUAL app. C Supp.(U.S. SENT'G COMM'N 2023).

In determining whether to reduce a sentence under Amendment 821, the Court must first determine the defendant's eligibility for a reduction by determining whether the Guidelines range on which the defendant's sentence was based was subsequently lowered by Amendment 821. *United States v. C.D.*, 848 F.3d 1286, 1289 (10th Cir. 2017); § 1B1.10(b)(1). If a defendant is not eligible for a reduction, a "district court lacks jurisdiction over the defendant's motion and the motion must be dismissed." *C.D.*, 848 F.3d at 1289. On the other hand, if the defendant is eligible for a sentence reduction, the Court must then consider whether the defendant has shown "a sentence reduction is consistent with the Commission's policy statements" and entitlement to "relief in light of the applicable sentencing factors found in" § 3553(a). *Id.* at 1289–90; *see also* § 1B1.10(a)(1), § 3582(c)(2). The fact that a court considered the § 3553(a) factors in the initial sentencing does not preclude a court from considering them in the context of a sentence reduction motion. *Osborn*, 679 F.3d at 1196. In addition to the § 3553(a) factors, courts may consider "post-sentencing conduct," § 1B1.10, app. n.1(B)(iii), and "the benefits the defendant gained by entering a Type–C [plea] agreement when it decides whether a reduction is appropriate . . . ." *Hughes v. United States*, 584 U.S. 675, 689 (2018); *see also Osborn*, 679 F.3d at 1195.

### III. DISCUSSION

Mr. Sosa is eligible for a sentence reduction because his sentence was based on a Guidelines range that was subsequently lowered by Amendment 821 and his current sentence of 92 months is above the low end of the amended Guidelines range. If the Court were to grant his motion and reduce the status points to 1, Mr. Sosa would have 12 criminal history points, reducing the criminal history category to V instead of VI. *See* USSG Chap. 5, Part A. With an offense level of 23 and criminal history category of V, Mr. Sosa's Guidelines range would be 84 to 105 months, rather than 92 to 115 months. *Id*. (*See also* Docs. 16 at 1; 19 at 7.)

In addition, the sentence reduction Mr. Sosa seeks is consistent with the USSG policy statement in § 1B1.10(b)(1). The requested sentence of 84 months is not "less than the minimum of the amended" Guidelines range, or "less than the term of imprisonment [Mr. Sosa] has already served." § 1B1.10(b)(2)(A), (C). (*See* Doc. 16 at 2 (stating that Mr. Sosa has been in continuous custody since September 2, 2019, i.e., 60 months).) And in accordance with the USSG's specific guidance regarding Amendment 821, the effective date of this Order is after February 1, 2024. § 1B1.10(e)(2).

However, considering the applicable § 3553(a) sentencing factors, the benefit he gained from the Plea Agreement, and his post-sentence conduct, the Court concludes a sentence reduction is not appropriate. First, Mr. Sosa's sentence of 64 months, followed by supervised release, for possessing a firearm did not deter Mr. Sosa from almost immediately obtaining a firearm as soon as he was released. This shows the Court that he is unable to abide by the terms imposed. Thus, lowering the sentence for the most recent violation would not promote respect for the law, provide just punishment for the offense, or afford adequate deterrence to his repeated criminal conduct. *See* § 3553(a)(1), (2)(A), (B). Additionally, according to the PSR, Mr. Sosa has a long criminal

history of drug possession and violent crimes, including armed robbery and aggravated assault with a deadly weapon. (Doc. 9 at 5–9.) In this context, reducing his sentence for possession of a stolen firearm would neither reflect the seriousness of the offense nor protect the public from further crimes. *See* § 3553(a)(2)(A), (C). Cumulatively, Mr. Sosa's history and characteristics weigh heavily against relief.

Second, Mr. Sosa received substantial benefits from the Plea Agreement in reduction of the Guidelines range and in the way his sentences were imposed. For example, in the absence of his Plea Agreement, his offense level would have been 26. (Doc. 9 at 15.) Assuming a criminal history category of VI as calculated before Amendment 821, the low end of the Guidelines range was 28 months more than the imposed sentence. *Id*. Notably, even if Mr. Sosa's criminal history category was adjusted to V consistent with Amendment 821, without the Plea Agreement the low end of the Guidelines range would have been 110 months, 18 months higher than the imposed 92 months. *See* USSG Chap. 5, Part A. In addition, per the Plea Agreement, the 12-month incarceration imposed in *Sosa I* was ordered to run concurrently with the sentence in this case. *Sosa I*, Doc. 79. These facts weigh heavily against reducing the sentence. *See United States v. Cota-Medina*, No. 21-2063, 2022 WL 971894, at *2 (10th Cir. Mar. 31, 2022) (affirming the district court's denial of a reduction where it determined that the "original sentence was fair and reasonable given the considerable benefits" the defendant received from a plea agreement (quotation marks and citation omitted)); *United States v. Madrid*, No. CR 18-2325-WJ, 2024 WL 2763764, at *3 (D.N.M. May 30, 2024) (holding that the plea agreement's benefits to the defendant, including reducing his Guidelines range by 20 months and running his sentences concurrently, weighed against reducing his sentence).

Third, Mr. Sosa has refused work or program assignments while incarcerated three times, resulting in loss of good time and commissary or visitation privileges. (Doc. 16 at 1.) The United States argues that these infractions weigh heavily against reducing his sentence. (Doc. 19.) The Court finds that Mr. Sosa's infractions weigh against Mr. Sosa, but not heavily. Mr. Sosa's post-sentence conduct does not rise to the level other courts have found militates against a sentence reduction. *See, e.g.*, *United States v. Verduzco*, 677 F. App'x 486, 487 (10th Cir. 2017) (26 infractions "including multiple instances of assault, fighting, and possession of a dangerous weapon"); *United States v. Camacho*, 654 F. App'x 927, 930 (10th Cir. 2016) (14 infractions "including assaulting prison staff, possession of dangerous weapons, threatening bodily harm, and using methamphetamine"); *United States v. Ringer*, 350 F. App'x 210, 212 (10th Cir. 2009) (infractions included "two assaults, five occurrences of possessing a controlled substance, possession of a dangerous weapon, two episodes of setting fires, and two misconducts for fighting").

Here, Mr. Sosa's infractions weigh only lightly against a sentence reduction because they were not based on violent incidents, they are over three years old, and Mr. Sosa has also earned his GED and completed several courses while incarcerated. (Doc. 16 at 2.) *See United States v. Collazo*, No. 09-CR-2621 JAP, 2020 WL 601943, at *4 (D.N.M. Feb. 6, 2020) (finding that the defendant's single infraction of escape did not weigh against a sentence reduction where it did not involve violence or damage to property); *see also Madrid*, No. CR 18-2325-WJ, 2024 WL 2763764, at *3 (infractions included not obeying an order, assaulting an inmate, and refusing a work/program assignment on three occasions which "reflect[ed] a lack of respect for the law").

Mr. Sosa argues that the Court already considered the § 3553 factors and determined that a sentence at the low end of the Guidelines range was appropriate. (Doc. 20 at 2.) Hence, he argues,

the Court should reduce his sentence to the *new* low end of the Guidelines range. *Id*. It is true that, in accepting the Plea Agreement, the Court was required to determine whether the 92–month sentence was within the Guidelines range. *See Hughes*, 584 U.S. at 687 (stating that a court must first "evaluat[e] the recommended sentence in light of the defendant's Guidelines range"). But accepting a specific sentence that is at the low end of the Guidelines range is not equivalent to a determination that *any* sentence within the amended range is appropriate. To the contrary, the Court is required to make a new determination that a reduced sentence is consistent with the USSG policy statements and § 3553(a). § 1B1.10(a)(1); *Dillon*, 560 U.S. at 822 (quoting § 3582(c)(2)).

Mr. Sosa also argues that a denial of his Motion is contrary to the purpose of Amendment 821, which is based on research on recidivism showing that "status points add little to the overall predictive value [regarding recidivism] associated with the criminal history score." (Doc. 20, at 1–2 (quoting Reasons for Amendment, Amendment 821, available at https://www.ussc.gov/guidelines/amendment/821 (last visited Aug. 30, 2024)).) However, the Sentencing Commission also noted that status points serve other purposes of sentencing, stating that status points for "those offenders in higher criminal history categories . . . reflect and serve multiple purposes of sentencing, including the offender's perceived lack of respect for the law, as reflected both in the offender's overall criminal history and the fact that the offender has reoffended while under a criminal justice sentence ordered by a court." *Id*. The Court finds that denying Mr. Sosa's Motion is not contrary to the purposes of Amendment 821.

## IV.   CONCLUSION

The Court finds Mr. Sosa is eligible for a sentence reduction under Amendment 821 and that a reduction is not inconsistent with the USSG policy statements. However, after considering Mr. Sosa's history and characteristics, the nature of the crime, public safety, the need for the

sentence to deter criminal conduct, and the benefits already afforded under the Plea Agreement, the Court finds a reduction is not warranted.

**IT IS THEREFORE ORDERED** that Mr. Sosa's Motion for Reduction (Doc. 18) is **DENIED.**

_____
ROBERT C. BRACK
SENIOR UNITED STATES DISTRICT JUDGE